**UNITED STEELWORKERS OF AMERICA, AFL–CIO.CLC, Plaintiff-Appellee,**

v.

**SMOKE–CRAFT, INC., Defendant-Appellant.**

**No. 78–3697.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 3, 1980.

Decided Aug. 13, 1981.

As Amended Sept. 28, 1981. Rehearing and Rehearing En Banc Denied Oct. 30, 1981.

Wayne D. Landsverk, Newcomb, Sabin, Meyer & Schwartz, Portland, Or., argued, for defendant-appellant; Jack B. Schwartz, Portland, Or., on brief.

Daniel P. McIntyre, Asst. Gen. Counsel, United Steel Workers, Pittsburgh, Pa., for plaintiff-appellee.

Before VAN DUSEN *, KILKENNY and HUG, Circuit Judges.

HUG, Circuit Judge:

Smoke-Craft, Inc. appeals the district court's summary judgment confirming an arbitration award that upheld a union grievance protesting the employer's refusal to honor the seniority rights of former strikers. Two unions were jointly certified as the exclusive bargaining agent of Smoke-Craft's employees. The unions negotiated a collective bargaining agreement with the employer, pursuant to which the grievance arose and was submitted to arbitration by both unions. Settlement negotiations interrupted the arbitration; the arbitration then proceeded with only one of the unions processing the grievance to completion. Smoke-Craft appeals the district court's summary confirmation of the arbitral award on the grounds that genuine issues of material fact remain unresolved and that the union, acting in its individual capacity, had no standing to seek confirmation of the award in the district court. We affirm.

## I. FACTS

Smoke-Craft is an Albany, Oregon beef product manufacturer. In 1974, having failed several times to become the exclusive bargaining representative of Smoke-Craft's employees, the Amalgamated Meat Cutters and Butcher Workmen of North America, AFL–CIO, Local 324 (the Meat Cutters) joined with the United Steelworkers of America, AFL–CIO (the Steelworkers) in asking the employees to elect the unions jointly as exclusive bargaining representative. After the two unions succeeded in their joint effort in the representation election, the National Labor Relations Board certified the two unions jointly in July 1974.

In the wake of a strike, during which Smoke-Craft hired a number of replacement employees, the employer and the joint union leadership concluded a collective bargaining agreement on January 31, 1975, which preserved to strikers their seniority rights for future recalls to employment. Shortly thereafter, the employer reduced the work week from five to four days. Both the Meat Cutters and the Steelworkers contended that this shutdown was a layoff and a recall that triggered the seniority provisions. After the layoff, when Smoke-Craft failed to recall strikers who had more seniority than the replacements the employer did recall, both unions filed a grievance, claiming a violation of the seniority provisions of the collective bargaining agreement.

The parties failed to resolve the dispute themselves and appealed to arbitration procedures. The arbitrator halted these procedures, however, when requested to do so by a representative of Smoke-Craft and a representative of both unions. The parties apparently believed that there was a possibility of settlement.[1] When three weeks passed without further communication from the parties, the arbitrator submitted a bill for his services along with a letter congratulating the parties on the settlement he assumed had been reached.

---

* The Honorable Francis L. Van Dusen, Senior United States Circuit Judge for the Third Circuit, sitting by designation.

1. A letter to the arbitrator from Mike Dye, the representative of both the Meat Cutters and the Steelworkers, stated that the parties "have de-

The next communication received by the arbitrator was a letter and a brief submitted by the United Steelworkers, a copy of which was sent to the Meat Cutters and Smoke-Craft.[2] When contacted by the arbitrator, Smoke-Craft's attorney stated that he was uncertain whether the company would file a responsive brief, but he requested and was granted an extension of time to file. When no brief had been received several weeks after the extension period had lapsed, the arbitrator closed the case and rendered his decision. Nothing in the record indicates that Smoke-Craft requested that the arbitrator not proceed, either because the Steelworkers were not authorized to process the grievance without the Meat Cutters or because the dispute had been settled.

In the opinion accompanying his award for the union, the arbitrator determined that the reduction from a five- to a four-day work week was a layoff under the collective bargaining agreement because it deprived employees of part of their employment. The arbitrator also concluded that the contract required employees to be recalled from layoff in accordance with their seniority. Because Smoke-Craft had not observed seniority in administering the recall, the arbitrator ordered back pay for workers who were not recalled according to their seniority. On the Steelworkers' petition for confirmation of this award, the district court granted summary judgment.

Smoke-Craft contends on appeal that there exist genuine issues of material fact as to (1) whether it was proper for the Steelworkers to proceed unilaterally with the arbitration, and (2) whether the dispute had been settled. The employer also argues that the Steelworkers did not have standing to seek confirmation of the award in the district court. The central question is whether Smoke-Craft can raise matters in a confirmation proceeding in the district court that were not raised before the arbitrator.

## II. ANALYSIS

### A. *Summary Judgment*

Smoke-Craft's first assignment of error is that unresolved issues of material fact remain on the question whether the Steelworkers could proceed properly with the arbitration without the assistance of the Meat Cutters. The parties do not dispute that the arbitration was properly commenced by the unions jointly. In later filing a brief with the arbitrator in an individual capacity, the Steelworkers merely continued the representation of aggrieved employees in a proceeding that was properly commenced; the Steelworkers did not initiate a new proceeding. In fact, the substance of the arbitration proceeding was complete at the time the Steelworkers filed its brief. The arbitrator had received the evidence in earlier hearings, when the joint representation arrangement was still functional.

No party, including Smoke-Craft, raised a question about the propriety of the Steelworkers' representation in its individual capacity. The Steelworkers forwarded copies of the letter to the arbitrator that accompanied the brief to both the Meat Cutters and Smoke-Craft.[3] The record suggests that the Meat Cutters expressly acquiesced in the Steelworkers' representation

cided to hold off filing any formal briefs ... because of a possible settlement. Please defer any decision on this case until they have had a chance to work on the possible settlement."

**2.** The letter disclosed that the Steelworkers were no longer interested in the joint bargaining representation arrangement with the Meat Cutters. The Meat Cutters, however, had indi-

cated earlier, in a letter from Mike Dye (representing the Meat Cutters) to Wayne Anderson (representing the Steelworkers) dated March 17, 1976, that they were willing to have the Steelworkers proceed with the grievance.

**3.** See footnote 1.

in the arbitration of this grievance.[4] Smoke-Craft's acquiescence must be implied from the absence of any objection on its behalf in the record.

Smoke-Craft's second assignment of error is that unresolved issues of material fact remain on the question of whether the dispute had been settled at the time the arbitrator halted the arbitration proceedings. When the parties, including Smoke-Craft, requested a delay in the arbitration proceedings, they did not represent that a settlement had been reached, only that there was a possibility of settlement. After a period when he received no communication from the parties, the arbitrator *assumed* that the parties had settled the grievance. The arbitrator's subsequent decision, however, that the dispute had not been resolved is well-supported by the record. He received a letter and a brief from the Steelworkers, indicating that the controversy was still alive. In a conversation with the employer's attorney, the arbitrator received no indication that the grievance had been settled, only that Smoke-Craft might file a responsive brief and wanted an extension of time in which to do so. Since the Steelworkers' letter to him had also been forwarded to the Meat Cutters, and the Meat Cutters had not been in contact with him, the arbitrator acted reasonably in proceeding with his decision. All indications were that all the parties desired that he proceed. There is no evidence in the record to the contrary.

Because Smoke-Craft failed to raise before the arbitrator both the question of the propriety of the Steelworkers' individual representation of the aggrieved employees and the question whether a settlement had been reached, we cannot countenance these claims on appeal. *See Kodiak Oil Field Haulers, Inc. v. Teamsters Union Local No. 959*, 611 F.2d 1286, 1290 (9th Cir. 1980) (failure to object to arbitrator's bias in arbitration proceeding waived issue). Smoke-Craft had an affirmative obligation to present to the arbitrator any arguments why the arbitration should not proceed. Parties to arbitration proceedings cannot sit idle while an arbitration decision is rendered and then, if the decision is adverse, seek to attack the award collaterally on grounds not raised before the arbitrator. *See Cook Industries, Inc. v. C. Itoh & Co. (America) Inc.*, 449 F.2d 106, 107–08 (2d Cir. 1971), *cert. denied*, 405 U.S. 921, 92 S.Ct. 957, 30 L.Ed.2d 792 (1972). To rule otherwise would be to thwart the national labor policy of encouraging the expeditious private arbitration of labor disputes without resort to the courts. *Mogge v. District 8, International Association of Machinists*, 454 F.2d 510, 513 (7th Cir. 1971); *see generally United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596–97, 80 S.Ct. 1358, 1360–61, 4 L.Ed.2d 1424 (1960).

B. *Standing*

Smoke-Craft also contends that the district court erred in holding that the Steelworkers union was "a party to the arbitration" within the meaning of the Federal Arbitration Act, 9 U.S.C. § 9, with standing to seek confirmation of the arbitration award.

Procedural questions growing out of a dispute properly submitted to arbitration are for the arbitrator to decide. *Hotel and Restaurant Employees and Bartenders Int. Union v. Michelson's Food Services, Inc.*, 545 F.2d 1248, 1252 (9th Cir. 1976); *Bealmer v. Texaco, Incorporated*, 427 F.2d 885, 887 (9th Cir. 1970); *Ass'n of Industrial Scientists v. Shell Development Co.*, 348 F.2d 385, 389 (9th Cir. 1965). Whether the Steelworkers had standing as a party to the arbitration to proceed with that arbitration, which had been properly commenced, was a procedural matter for the determination of the arbitrator. Smoke-Craft raised no

---

4. The Meat Cutters had at least tacitly approved the Steelworkers' unilateral representation of the aggrieved employees in the continued arbitration proceedings. *See* note 2 *supra.* There is no evidence in the record of any actual conflict between the unions on the issue of continued representation, including the right to bring a confirmation action, and even if there had been such a conflict, the arbitration proceeding was the correct forum for its resolution.

objection to the standing of Steelworkers to proceed with the arbitration. The award of the arbitrator was an implicit finding of such standing. Having failed to raise any objection to the Steelworkers' standing to proceed as "a party to the arbitration" in the arbitration proceeding, Smoke-Craft cannot, at this stage, be heard to assert that the Steelworkers union lacks standing as a "party to the arbitration" entitled to seek confirmation of the arbitration award in district court.

■ The Steelworkers had a clear duty to continue to represent all Smoke-Craft employees in the grievance arbitration; they had the tacit approval of the Meat Cutters to do so; their standing to proceed was implicit in the arbitrator's award and was not contested by Smoke-Craft; and they therefore had the necessary standing in the district court to secure confirmation of the arbitral award.

The summary judgment of the district court for the Steelworkers is AFFIRMED.