**NORTH ADAMS REGIONAL HOSPITAL**

v.

**MASSACHUSETTS NURSES ASSOCIATION.**

Civ. A. No. 94–30227–MAP.

United States District Court, D. Massachusetts.

June 16, 1995.

Fernand J. Dupere, Jr., Southampton, MA, for plaintiff.

Alan J. McDonald, Jack J. Canzoneri, Newton, MA, for defendant.

### MEMORANDUM REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

PONSOR, District Judge.

On May 8, 1995, Magistrate Judge Neiman issued his Report and Recommendation to the effect that the defendant's Motion for Summary Judgment be allowed and that judgment enter in favor of the Massachusetts Nurses Association. No objection has been filed by the plaintiff to this recommendation. The defendant however, has objected to certain incorrect findings of fact and, more particularly, to the Magistrate Judge's recommendation that the defendant not be granted attorney's fees.

It is not necessary to address the claim by the defendant that the Magistrate Judge's findings "imply" something inaccurate about

the timing of the arbitrator's decision. This implication, even if it were intended, has no bearing on the substance of the Magistrate Judge's recommendation.

More importantly, the Magistrate Judge's decision not to award attorney's fees to the defendant in this case is well founded. The underlying facts and legal issues simply do not present the sort of circumstance that justifies such an award.

For the foregoing reasons, the Magistrate Judge's Report and Recommendation is hereby adopted in its entirety. The defendant's Motion for Summary Judgment is ALLOWED and judgment will enter for defendant both on plaintiff's complaint and defendant's counter-claim, without an award of attorney's fees to the defendant.

It is So Ordered.

### REPORT AND RECOMMENDATION REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

NEIMAN, United States Magistrate Judge.

### I. INTRODUCTION

Plaintiff North Adams Regional Hospital ("Hospital") brought this action seeking to have an arbitration award between the Plaintiff and Defendant Massachusetts Nurses Association ("MNA") vacated. The matter currently before the Court is MNA's motion for summary judgment. Pursuant to Rule 3 of the Rules of United States Magistrates in the United States District Court for the District of Massachusetts, MNA's motion for summary judgment has been referred to the Court for a report and recommendation. 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, the Court recommends granting MNA's motion. However, the Court does not recommend an award of the attorneys' fees requested by MNA.

### II. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff North Adams Regional Hospital and Defendant Massachusetts Nurses Association entered into a collective bargaining agreement ("Contract") for the period April 1, 1992, through March 31, 1994. The Contract covered all non-supervisory nurses and registered nurses working at the Hospital. The Contract contained several provisions relating to disputes, including the following: (1) a grievance procedure to resolve disputes between the parties regarding the interpretation of, application of, or compliance with the provisions of the Contract; (2) a provision that allows for an arbitrator to make the final and binding decision in the event that a dispute cannot be settled; and (3) a provision that the arbitrator shall not have any authority to add to, subtract from, or modify any of the terms of the Contract.

In the spring of 1993, a dispute arose between the parties regarding the interpretation and application of Section 15.01 of the Contract. Section 15.01 of the Contract, entitled "Vacancies," provided as follows:

Vacancies in all units will be posted for a period of seven (7) days. Applications must be made in writing to the Director of Human Resources within the seven (7) day period. All lateral transfers will be filled on the basis of qualifications, as determined by the Nurse Manager. Where qualifications are relatively equal, seniority will prevail ...

Both parties contend that § 15.01 supports their opposing positions. The MNA asserts that § 15.01 constrained the Hospital from bypassing a minimally qualified *internal* candidate in favor of an *external* candidate, regardless of whether the external candidate was more qualified. The Hospital asserts that § 15.01 does not distinguish between internal and external candidates and that it was improper for the arbitrator to rely on other sections of the Contract in order to interpret § 15.01.

The dispute involved Deidre Vazquez, who was a staff nurse at the Hospital and a member of the class of employees covered by the Contract. Ms. Vazquez applied for the position of staff nurse in the Emergency Department when she learned there was an opening. Qualifications for the position were posted as follows:

Must be a graduate of an approved R.N. program, licensed or eligible for licensure.

Knowledge of and ability to utilize the nursing process, evidence of good personal and professional traits, in regard to ethics, compassion, judgment and leadership; good interpersonal relationships, ability to communicate effectively and actively pursues continuing education/inservice opportunities. Must have record of good past employee performance (evaluations, attendance and work record. 3–5 years of extensive medical/surgical experience is preferred.) Recent and applicable critical care/emergency department training and/or experience is preferred. Must be willing to complete E.R. Department orientation program. ACLS certification and plan on eventual completion of Trauma Nurse Core Course. [*sic*]

Defendant's Statement of Material Facts, Exhibit E, page 3 (Docket 08). At the time of the arbitration, Ms. Vazquez was the only "internal" applicant for the position. There were several applicants for the position who were not employed by the hospital. Such applicants were considered "external" applicants. The Hospital selected an external applicant for the position in the Emergency Department, bypassing Ms. Vazquez.

At the arbitration hearing, the parties mutually authorized the arbitrator to address the following issues: did the Hospital violate the Contract by failing to appoint Deidre Vazquez to a staff nurse vacancy in the Emergency Department? If so, what was to be the remedy? Before deciding those issues, the arbitrator found that the external applicant was more qualified for the position in the Emergency Department than Ms. Vazquez. The arbitrator also found, however, that Ms. Vazquez was at least "minimally qualified" for the position.

At the close of the hearing, the arbitrator found in favor of the MNA. The arbitrator reasoned that § 15.01 was ambiguous with respect to whether members of the bargaining unit were to be given preference for vacancies. However, the arbitrator concluded that the Contract provided for significant seniority rights that included the right to first consideration for a lateral transfer to fill a vacancy. The arbitrator also found that § 15.01 required only that the internal applicant be qualified, not *more* qualified, than external applicants. The arbitrator concluded that the parties intended that a qualified internal candidate for lateral transfer should receive preference over external applicants.

The arbitrator's award was issued on September 6, 1994. It found that the Hospital violated the contract by failing to appoint Ms. Vazquez. As a remedy, the arbitrator required the Hospital to immediately appoint Ms. Vazquez to the staff nurse position in the Emergency Department, retroactive to the date the position was filled in July, 1993, and to make her whole for any benefits she may have lost under the Contract. The Hospital brought the current action in an attempt to vacate the award, and the MNA has moved for summary judgment. To date, the Hospital has not complied with the arbitrator's award.

### III. STANDARD OF REVIEW

■ Summary judgment is appropriate where the record reveals no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). See *Mendes v. Medtronic, Inc.,* 18 F.3d 13, 15 (1st Cir.1994); *Commercial Union Ins. Co. v. Walbrook Ins. Co.,* 7 F.3d 1047, 1050 (1st Cir.1993), citing *Mesnick v. General Electric Co.,* 950 F.2d 816 (1st Cir.1991), *cert. denied,* 504 U.S. 985, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992). The facts must be viewed in the light most favorable to the non-moving party. *Commercial Union Ins. Co. v. Walbrook,* 7 F.3d at 1050. The non-moving party bears the burden of placing at least one material fact into dispute after the moving party shows the absence of any disputed material fact. *Mendes v. Medtronic,* 18 F.3d 13, discussing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986).

■ A "genuine" issue is one that only a finder of fact can properly resolve because it may reasonably be resolved in favor of either party and a "material" issue is one that affects the outcome of the suit. *Collins v. Martella,* 17 F.3d 1, 3 n. 3 (1st Cir.1994), citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 250, 106 S.Ct. 2505, 2510, 2511, 91 L.Ed.2d 202 (1986). Mere allegations or

conjecture unsupported in the record are insufficient to raise a genuine issue of material fact. *Horta v. Sullivan,* 4 F.3d 2, 11 (1st Cir.1993). Absent a genuine dispute of material fact, questions of law are appropriate for resolution on summary judgment. *Jimenez v. Peninsular & Oriental Steam Navigation Co.,* 974 F.2d 221, 223 (1st Cir.1992). Appellate review of summary judgment is plenary, since the standard of review requires the trial court to make a legal determination rather than to engage in fact-finding. *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 48 (1st Cir.1990).

In the present case, the undisputed facts indicate that the MNA is entitled to have the Court grant judgment in its favor, dismissing the Hospital's complaint which seeks to vacate the arbitration award. As a matter of law, the MNA is also entitled to have the Court confirm the arbitration award. An application of the relevant summary judgment standards to the present action compels the Court to recommend that the MNA's motion for summary judgment be granted.

## IV. DISCUSSION

### A. Newly–Presented Arguments

The MNA asserts that many of the Hospital's arguments should not be considered, since they were not raised before the arbitrator and are pursued for the first time before the Court. For example, the Hospital argues that the arbitrator exceeded his authority when interpreting § 15.01 of the Contract with reference to other contractual provisions. The MNA claims that the Hospital never raised this argument prior to the current litigation. The MNA asserts that the Hospital's argument was neither asserted during the Hospital's opening statement at arbitration, raised as an objection to the MNA's arbitration brief, nor argued in the Hospital's arbitration brief.

The First Circuit has directed that a party who fails to assert an argument during arbitration waives the right to assert the argument in subsequent litigation relating to the enforcement or vacation of the arbitration award. *Dorado Beach Hotel Corp. v. Local 610, The Hotel Employees and Restaurant Employees International Union,* 959 F.2d 2, 5–6 (1st Cir.1992).

> Parties to arbitration proceedings cannot sit idle while an arbitration decision is rendered and then, if the decision is adverse, seek to attack the award collaterally on grounds not raised before the arbitrator.

*Id.* at 6, quoting *United Steelworkers of America, Etc. v. Smoke–Craft,* 652 F.2d 1356, 1360 (9th Cir.1981), *cert. denied,* 455 U.S. 1021, 102 S.Ct. 1718, 72 L.Ed.2d 139 (1982). See also *United Food and Commercial Workers, Local 400 v. Marval Poultry Co., Inc.,* 876 F.2d 346, 353 (4th Cir.1989).

Although there is merit to the MNA's assertion that the Hospital has waived its rights to assert the above-described argument, as well as others, the Court finds it unnecessary to explore all the nuances of the MNA's and the Hospital's respective positions with regard to the timeliness of the Hospital's arguments. As discussed below, even when considering all of the Hospital's arguments as if they were specifically made to the arbitrator, the Court finds no basis to vacate the arbitration award.

### B. Judicial Deference to Arbitration Awards

As the term itself indicates, when parties submit a dispute to "binding arbitration," they are bound by the outcome of such proceedings, absent unusual circumstances. *Posadas de Puerto Rico Associates, Inc. v. Asociacion de Empleados de Casino de Puerto Rico,* 821 F.2d 60, 61 (1st Cir.1987). Review of an arbitral award in the First Circuit is extraordinarily deferential. *Dorado Beach,* 959 F.2d at 3–4; *Challenger Caribbean Corp. v. Union Gen. De Trabajadores de Puerto Rico,* 903 F.2d 857, 860–861 (1st Cir.1990), *reh'g denied,* 1990 WL 102872 (1st Cir, 1990). A court should uphold an arbitrator's interpretation where there exists any plausible argument to support the arbitrator's decision. *Berklee College of Music v. Berklee Chapter of the Massachusetts Fed'n of Teachers, Local 4412,* 858 F.2d 31, 32–33 (1st Cir.1988), *cert. denied,* 493 U.S. 810, 110 S.Ct. 53, 107 L.Ed.2d 22 (1989); *El Dorado Technical Services, Inc. v. Union General De*

*Trabajadores de Puerto Rico,* 961 F.2d 317, 319 (1st Cir.1992); *Crafts Precision Indus., Inc. v. Lodge No. 1836 of District 38 of Machinists and Aerospace Workers,* 889 F.2d 1184, 1185 (1st Cir.1989). In fact, a court must uphold the arbitration award even if an arbitrator made a serious factual mistake. *Air Line Pilots Ass'n Int'l v. Aviation Ass'n.,* 955 F.2d 90, 93 (1st Cir.1992), *cert. denied,* —— U.S. ——, 112 S.Ct. 3036, 120 L.Ed.2d 905 (1992). See also *United Paperworkers Int'l Union v. Misco Inc.,* 484 U.S. 29, 36, 108 S.Ct. 364, 369–70, 98 L.Ed.2d 286 (1987). A federal court should only adjust an arbitral award made under the aegis of a collective bargaining agreement in the most rare and compelling circumstances. *El Dorado* at 318.

 an arbitration context, the consideration of factual issues relative to summary judgment motions may be narrowly focused: "the only potential areas for consideration of factual questions that would preclude summary judgment concern whether the dispute actually was arbitrable ... and whether the award drew its 'essence' from the agreement ..." *International Ass'n of Machinists and Aerospace Workers, District 776 v. Texas Steel Company,* 538 F.2d 1116, 1119 (5th Cir.1976), *cert. denied,* 429 U.S. 1095, 97 S.Ct. 1110, 51 L.Ed.2d 542 (1977). The court describes the judicial deference due arbitration decisions:

> [t]his inquiry entails whether the alleged arbitrable claims are governed by the contract and its arbitration provisions and whether the arbitration panel has confined its decision, and possibly the remedy, to the interpretation and application of the collective bargaining agreement. The court must scrupulously avoid the invasion of the arbitration panel's sphere and the enticement of ruling on the "intrinsic merits" of the dispute.

*Id.*

There are no genuine issues of material fact in the present action. The clear and unambiguous language of the issue before the arbitrator was whether the Hospital violated the collective bargaining agreement. The arbitrator determined that the Hospital had violated the Contract and ordered appropriate relief. Neither party is contending that the dispute was never actually arbitrable. No circumstances exist which convince the Court not to accord deference to the arbitration award.

### C. Plausible Interpretation of the Contract

 The Hospital's primary argument in support of vacating the arbitration award is that the arbitrator exceeded his powers with respect both to the interpretation and application of the substantive provisions of the Contract. The Hospital contends that the arbitrator failed to observe the contractual requirement that he not add to, subtract from, or modify its terms. The Hospital asserts that the arbitrator breached his authority (1) by modifying the Contract and requiring that vacancies under § 15.01 be treated as promotional vacancies under § 15.02 [1], and (2) by ordering the appointment of Ms. Vazquez to the position in question since there were other bargaining unit members with equal or greater qualifications.

 As long as there exists at least a plausible argument that the arbitrator's award drew its essence from the Contract as an *interpretation* of § 15.01, rather than a *modification* of it, the arbitrator did not exceed his authority. *Berklee, supra; El Dorado, supra; Crafts, supra.* The arbitrator's conclusion that § 15.01 is ambiguous, because the section neither specifically allowed nor prohibited management from considering external applicants, is not outside the scope of his authority. It was the parties themselves who empowered the arbitrator to determine whether the Hospital violated the Contract by failing to appoint Ms. Vazquez to

---

1. Section 15.02, entitled "Promotions," reads as follows:

When a promotional vacancy in the bargaining unit occurs, it shall be filled by the most qualified applicant as determined by the Nurse Manager. If there are applicants of relatively equal ability as determined by the Nurse Manager, then seniority shall be the determining factor in the selection. If there are no qualified applicants within the bargaining unit as determined by the Nurse Manager, then the Hospital may recruit from outside the bargaining unit ...

the staff nurse vacancy in the Emergency Department.

Once the arbitrator determined that § 15.01 was ambiguous, he could properly resort to traditional rules of contract construction to clarify the ambiguity and determine the parties' intent. See *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960). See also *Bacardi Corp. v. Congreso de Uniones Industriales*, 692 F.2d 210, 212–213 (1st Cir.1982) (arbitrator is free to examine other provisions of the contract as a means of construing an ambiguous provision). When viewing the Contract as a whole, the arbitrator plausibly could have concluded, as he did, that the Hospital's rights under the Contract were significantly tempered by the job security interests of the nurses and that nurses with greater seniority have more job security. Thus, the arbitrator could plausibly conclude, as he did, that nurses with at least some seniority have a greater entitlement to a position at the Hospital than nurses from outside the bargaining unit, who by contractual definition have no seniority. In fact, in the Court's view, the "posting" and "lateral transfer" references in § 15.01 appear to presume a preference for internal candidates. Finally, the arbitrator could have plausibly concluded, as he did, that his interpretation of § 15.01 was reinforced by extrinsic evidence. *Berklee*, 858 F.2d at 32–33 (arbitrator is free to examine extrinsic evidence in deriving meaning of contract). As the arbitrator noted, the only evidence of past practice was that an outsider was never considered for a lateral transfer vacancy. The Court finds that the arbitrator did not exceed his authority when interpreting § 15.01 of the Contract because he made a plausible interpretation of the Contract's provisions.

In addition, the arbitrator did not exceed his authority by applying § 15.01 rather than § 15.02. The arbitrator found that the issue before him pertained to the rights of nurses who applied for lateral transfer to vacant positions pursuant to § 15.01. He did not apply § 15.02 in reaching his decision, nor did he discuss the rights of nurses seeking promotions. However, even if he took § 15.02 into consideration to resolve the dispute, there was nothing in the parties' framing of the issue which barred the arbitrator from viewing the dispute as analogous to a "promotions" dispute. The Hospital did not claim at the arbitration that the case could only be resolved under § 15.01. The uncontroverted material facts show that the parties mutually agreed to an issue that broadly asked whether the Hospital violated the collective bargaining agreement, not to a more narrowly-framed issue encompassing only § 15.01.

Nor did the arbitrator exceed his authority by ordering the Hospital to transfer Ms. Vazquez when there *may* have been other, more qualified members of the bargaining unit. There is no dispute that Ms. Vazquez was the only remaining internal applicant interested in the Emergency Room position at the time of the arbitration. The Hospital's arbitration brief so admits and, in its opening statement at arbitration, the Hospital explicitly stated that it did not object to the dispute being narrowed to the right of Ms. Vazquez to the position. Thus, it was unnecessary for the arbitrator to consider the rights of other "internal" nurses to the position.

As a result, the arbitrator was fully entitled to view the dispute as one concerning Ms. Vazquez's right to the position versus the Hospital's right to hire an external candidate. The arbitrator determined that Ms. Vazquez was qualified for and entitled to the position, and the Court finds no reason to challenge the arbitrator's finding of fact. The Supreme Court requires such a finding:

> Because the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept. Courts thus do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts. To resolve disputes about the application of a collective-bargaining agreement, an arbitrator must find facts and a court may not reject those findings simply because it disagrees with them.

*United Paperworkers Int'l Union v. Misco,* 484 U.S. 29, 37–38, 108 S.Ct. 364, 370–71, 98 L.Ed.2d 286 (1987). Even if the Court disagreed with the arbitrator's factual findings, which it does not, the Court must accept the arbitrator's finding that Ms. Vazquez was "minimally qualified" and go no further to consider what factors made her qualified.

■ Courts have no authority to overrule an arbitrator's decision simply because their interpretation of the contract differs from that of the arbitrator. *Bacardi Corp. v. Congreso de Uniones Industriales,* 692 F.2d 210, 211 (1st Cir.1982), citing *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960); *Dorado Beach,* 959 F.2d at 3–4. The Supreme Court has held that, "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, [the fact] that a court is convinced [the arbitrator] committed serious error does not suffice to overturn his decision." *United Paperworkers Int'l Union v. Misco,* 484 U.S. at 38, 108 S.Ct. at 371. No such serious error is remotely in evidence here.

### D. Public Policy

■ The Hospital's final argument is that the arbitrator's decision is contrary to public policy. In essence, the Hospital asserts that Ms. Vazquez, even if minimally qualified for the position as posted, was not qualified for the position given the existing "core staffing." Such "core staffing" necessitated, in the Hospital's view, that a nurse trained in Advanced Cardiac Life Support ("ACLS") was necessary for the particular position, in light of existing personnel. Because Ms. Vazquez did not have such certification, the Hospital raises the specter of unsafe hospital conditions and, accordingly, concerns about public policy.

■ The Hospital must meet three elements before a court may determine that an arbitration award violates public policy. *Misco,* 484 U.S. at 43, 108 S.Ct. at 373, citing *Muschany v. United States,* 324 U.S. 49, 66–67, 65 S.Ct. 442, 451, 89 L.Ed. 744 (1945). The Hospital falls short in each regard. First, the Hospital must prove that there is a violation of a specific policy contained in a statute or case precedent. In the present action, the Hospital has made nothing but general claims of a public policy violation.

■ Second, under *Misco,* the Hospital must also show that the Court can ascertain a public policy violation by considering the facts as found by the arbitrator. The Hospital attempts to convince the Court that there is a violation of public policy because Ms. Vazquez was not "minimally qualified." In essence, the Hospital wants the Court to revisit the question previously decided by the arbitrator. As discussed earlier, the Court must let the arbitrator's finding of Ms. Vazquez's minimal qualifications stand. The Court's consideration of the Hospital's public policy argument does not automatically empower the Court to find its own facts. *Misco,* 484 U.S. at 45, 108 S.Ct. at 374.

Third, pursuant to *Misco,* a party claiming a violation of public policy must also show that the alleged policy was "clearly" violated. *Misco,* 484 U.S. at 44, 108 S.Ct. at 374. See also *Brigham & Women's Hospital v. Massachusetts Nurses Ass'n,* 684 F.Supp. 1120, 1124–25 (D.Mass 1988). ("[I]t must be clearly shown that enforcement of the award would violate public policy.") Given its inability to cite a specific policy, the Hospital can not convince the Court that any public policy was "clearly" violated.

The Hospital relies exclusively on *Electronics Corp. v. International U. of E.R. & M.W.L.,* 492 F.2d 1255 (1st Cir.1974), which held that an arbitration award violates public policy where an arbitrator makes an erroneous finding of fact or finds a non-fact. The kind of "gross mistake" before the court in *Electronics Corp.* is not present here. In *Electronics Corp.,* the "sole articulated basis" for the arbitrator's award was concededly in error. *Id.* at 1257. In the present case, the Hospital simply reasserts that Ms. Vazquez is not qualified for the position. However, the Hospital concedes that the position as posted did not require ACLS certification. Second, the Hospital concedes that it previously filled such emergency room positions with non–ACLS–certified nurses, requiring

them only to become ACLS certified as soon as possible.

Since Ms. Vazquez was qualified for the position as posted, her qualifications for the particular "core staffing" requirements (which the Hospital claims lower Ms. Vazquez below minimal requirements), are not the gross factual error which the court in *Electronics Corp.* addressed. In any event, *Electronics Corp.* was decided prior to the Supreme Court's ruling in *Misco.* The current standard is much narrower than the earlier one discussed in *Electronics.* Other than the *Electronics Corp.* decision, the Hospital does not refer to authority which would support a public policy nexus to the arbitration award. In sum, the Court has not found anything in the arbitrator's decision that is contrary to public policy. See *Exxon Shipping Co. v. Exxon Seamen's Union,* 993 F.2d 357 (3rd Cir.1993).

### V. AWARD OF COSTS

The MNA requests the award of attorney's fees and costs, as part of its motion for summary judgment. The Court does not recommend such an award to the MNA as a prevailing party. Although § 301 of the Labor Management Relation Act, 29 U.S.C. § 185, does not specifically provide for costs and attorneys fees, "it is clear that when a challenge to an arbitration [award] is without justification these costs are awardable." *International Assn' of Machinists v. Texas Steel Co.,* 538 F.2d 1116, 1121 (5th Cir.1976), *cert. denied,* 429 U.S. 1095, 97 S.Ct. 1110, 51 L.Ed.2d 542 (1977). See also *Courier–Citizen Co. v. Boston Electrotypers Union No. 11,* 702 F.2d 273, 282 (1st Cir.1983). The Court does not find the Hospital's complaint completely "without justification."

Despite the Court's recommendation that the MNA prevail on the merits of its motion for summary judgment, the Court does not

find that the Hospital's suit was frivolous, unreasonable, or without foundation. *Christiansburg Garment v. EEOC,* 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978). Nor does it find that the Hospital's desire to submit this question to the Court was simply a delaying tactic. *Western Electric Co. v. Communication Equipment Workers, Inc.,* 409 F.Supp. 161 (D.C.Md.1976), *aff'd,* 554 F.2d 135 (4th Cir.1977); *Durabond Products, Inc. v. United Steelworkers of America,* 421 F.Supp. 76, 79 (N.D.Ill.1976). The Hospital was avowedly concerned about the "public policy" implications of the arbitrator's award and, while a weak argument, was not frivolous or unjustified in its pursuit.

### VI. CONCLUSION

There is no remedy for the Hospital in this action because the heart of its complaint is that it simply disagrees with the arbitrator's interpretation of the Contract. The Court finds no material issues of fact that would provide the Hospital with a basis from which to argue that the arbitrator exceeded his authority. The arbitrator presented at least a plausible argument when interpreting the contract and applying the facts.

For all the above reasons, this Court recommends that the Defendant's motion for summary judgment be ALLOWED, the complaint be dismissed, and judgment be entered in favor of the MNA confirming the arbitration award. The Court also recommends that Defendant's request for attorneys' fees be DENIED.[2]

Dated: May 8, 1995

---

**2.** The parties are advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court **within ten (10) days** of the party's receipt of this Report and Recommendation. The written objection must specifically identify

the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. See *U.S. v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir. 1986); *U.S. v. Vega,* 678 F.2d 376, 379 (1st

Cir.1982). *See also Thomas v. Arn,* 474 U.S. 140, 154–55, 106 S.Ct. 466, 474–75, 88 L.Ed.2d 435 (1985), *reh'g denied,* 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986).