Filed 3/26/13  Brooks v. Bechtel CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| RUFUS L. BROOKS,<br><br>　　　　Plaintiff and Appellant,<br><br>v.<br><br>BECHTEL CORPORATION et al.,<br><br>　　　　Defendants and Respondents. | A132926<br><br>(San Francisco County<br>Super. Ct. No. CPF-10-510509) |

## I. INTRODUCTION

Appellant Brooks, a former employee of respondent Bechtel Corporation, appeals in pro per from orders of the San Francisco Superior Court denying his petition to vacate several arbitration decisions of an arbitrator appointed by the Judicial Arbitration and Mediation Services (JAMS).  Those decisions dismissed with prejudice appellant's several claims against Bechtel Corporation and several of its officers and employees (hereinafter collectively referred to as Bechtel) relating to their alleged failure to pay him overtime wages and other asserted improper actions toward him.  We affirm the orders appealed from and the subsequent judgment of the superior court.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On August 12, 2005, appellant, a resident of Orlando, Florida, signed an employment agreement with Bechtel and commenced work on a Bechtel

1

telecommunications project in central Florida.  This project apparently ended sometime before June 2007,[1] and appellant's employment was terminated.

Pursuant to the arbitration clause in his employment agreement, appellant filed a claim based on the circumstances of his employment, its termination, and Bechtel's alleged refusal to rehire him.  These claims were first submitted to arbitration in Florida before the American Arbitration Association (AAA).  That arbitration apparently began in August 2007 but ended a few months later, in early 2008, when the arbitrator entered an order to show cause based on appellant's apparent discovery violations.

In April 2008, appellant then initiated another arbitration, this time with JAMS; it alleged a claim for overtime pay.  A few months later, apparently in July 2008, he filed a second JAMS arbitration demand, this time based on alleged race and age discrimination and retaliation.  R. Wayne Thorpe was appointed to conduct the arbitration.

Bechtel counter-claimed in the JAMS arbitration based on appellant's many alleged  inappropriate and personal actions in 2007, actions directed toward several Bechtel officers and employees.  These actions included repeated telephone calls and e-mail communications to the offices of those individuals, including Bechtel's President, which included aggressive and threatening wording and terminology, and a statement that he would "Declare War" on Bechtel.  As a result of these actions, in October 2007 Bechtel advised appellant that he was ineligible for rehire.  But appellant's aggressive actions toward the corporation and some of its officers and employees continued well into 2008; they included several e-mails containing significant profanity and accusations of racial prejudice (appellant is Black).  They also included several harassing telephone calls.

At this point, i.e., in June 2008, Bechtel sought and obtained a temporary injunction against appellant from a Florida court.  The following month, that court denied

---

[1] We say "apparently"—and will repeat that word hereafter—because both parties' briefs and the record provided us (in clerk's transcript form by appellant and augmented in electronic format by respondent via its Motion to Augment) lack some precise dates regarding the parties' pre-litigation relationship.

appellant's motion to dissolve the injunction. In its opinion, the court found that appellant's contacts with Bechtel were "inappropriate, harassing and threatening," that some of his e-mails to it "suggested violence" and would reasonably generate fear in its recipients, and made other specific findings along the same lines.

Notwithstanding this opinion and the existing injunction, in August and September 2008 appellant regularly picketed outside the building which contained the offices of Bechtel's Florida counsel and, in so doing, carried with him and displayed a variety signs accusing Bechtel and its President of hiring "killers." Some of these signs even displayed the direct-dial telephone number of Bechtel's President and the office phone number of its Orlando attorney. Based largely on these actions, Bechtel then sought to have appellant held in contempt. The trial court agreed that he should be held in contempt, and sentenced him to 120 days in jail; at Bechtel's request, however, that sentence was suspended. However, on October 6, 2008, the court entered a detailed, 10-page order finding appellant in contempt of court and specifying the reasons it so held. Appellant appealed the contempt order but, albeit without an opinion, a Florida appellate court affirmed the trial court's contempt order the following year. (See *Brooks v. Bechtel Corp.* (Fla.Ct.App. 2009) 25 So.3d 571.

Well before that affirmance, however, in April 2009, Bechtel moved to dismiss with prejudice appellant's claims against it in the JAMS arbitration. It based this motion mainly on appellant's alleged attempts to bribe an arbitration witness, Scott Cuen, his alleged attempts to tamper with other designated arbitration witnesses, and other alleged misconduct. JAMS arbitrator Thorpe determined that the motion stated a prima facie case and ordered an evidentiary hearing. Such was conducted on May 12, 2009. After that hearing, the arbitrator found that appellant had (1) attempted to bribe witness Cuen, (2) tampered with and threatened two other witnesses, Kari Walrich and Bill Olson, (3) engaged in a variety of other conduct which was expressly contrary to prior orders of the arbitrator, and (4) given "evasive and deceptive" testimony at the arbitration hearing.

Although he sought and received several orders granting him a continuance to file a post-hearing brief, appellant filed no such brief. Rather, he filed several motions

3

seeking to remove Thorpe as the assigned JAMS arbitrator, another motion to stay the arbitration, and a petition in the Florida court asking it to preclude the arbitrator from ruling on Bechtel's motion to dismiss the JAMS arbitration because of the arbitrator's alleged misconduct. All these motions and the petition were denied.

On October 28, 2009, Arbitrator Thorpe entered a First Interim Award dismissing all of appellant's claims with prejudice. Among other things, that award stated that appellant's conduct "was committed willfully, in bad faith, and with knowledge that the conduct was improper and potentially violative of the law." He continued by saying that "I have never before witnessed conduct so fundamentally disrespectful of our legal system." In terms of relief, this award concluded that Bechtel had no obligation to reemploy appellant due to his conduct beginning in 2007, and that it was entitled to its attorney fees and costs. Via later awards, the arbitrator determined that Bechtel should be awarded $20,000 in attorney fees (reduced from an earlier award of $35,000).

On June 18, 2010, appellant filed a petition in San Francisco Superior Court seeking to vacate the arbitrator's several decisions.[2] Bechtel filed an opposition to this petition and, also, a cross-petition to confirm the three arbitration awards noted above. A hearing on these matters was set for January 24, 2011, but later continued until April 18, 2011. However, appellant did not appear—either in person or telephonically—at that hearing[3] and, at it, the trial court (Judge Peter Busch) adopted its tentative ruling, filed the day before, denying appellant's petition to vacate and granting Bechtel's petition to confirm.

On June 1, 2011, that court filed a formal order to the same effect. It denied appellant's petition and granted Bechtel's cross-petition because (1) the former was "untimely under the Federal Arbitration Act" and (2) "it lacks merit." Bechtel served a notice of entry of this order the following day.

---

[2] Neither in this petition—nor in any other filing with the superior court or this court—does appellant explain why his petition was filed in California and not in Florida.

[3] Prior to this date, appellant unsuccessfully attempted to file a motion to continue the April 18 hearing.

On June 22, 2011, appellant filed a motion in the superior court asking for a new trial along with a supporting declaration. On August 1, 2011, that court denied the motion both as untimely[4] and as presenting "no grounds on which the court should revisit its June 1, 2011 order." The same day, appellant filed a timely notice of appeal.[5]

## III. DISCUSSION

For several reasons, the trial court was correct in the orders it issued and in its judgment in favor of respondents.

Before noting and discussing those reasons, however, some words are in order regarding the judicial review of the rulings and conclusions of an arbitrator in a case in which the parties agreed to have the case decided via an arbitration conducted pursuant to the Federal Arbitration Act (FAA), as these parties did. The law is very clear on that subject. As the United States Supreme Court held in *Hall Street Associates, L.L.C. v. Mattel, Inc.* (2008) 552 U.S. 576, 588 (*Hall Street Associates*), the FAA provides "a national policy favoring arbitration with just the limited review needed to maintain arbitration's essential virtue of resolving disputes straightaway." More recently, that Court has written that a litigant seeking to have a court overturn an arbitration ruling provided under the FAA "must clear a high hurdle." (*Stolt-Nielsen S.A. v. AnimalFeeds International Corp.* (2010) 559 U.S. 662 [130 S.Ct. 1758, 1767].)

Our own Supreme Court has cited and quoted the holding in *Hall Street Associates.* (See *Cable Connection, Inc. v. DIRECTV, Inc.* (2008) 44 Cal.4th 1334,

---

[4] Code of Civil Procedure sections 659, subdivision (a)(2), and 1008, subdivision (a), require, respectively, that such a motion be filed within 15 days from service of notice of entry of judgment or 10 days from notice of the entry of an order. In his briefs to us, appellant argues that the trial court was wrong in so finding, and that any delay was the responsibility of the Superior Court clerk's office. However, we conclude that we need not address this argument because the alternative basis for the trial court's denial of appellant's petition, i.e., that "it lacks merit" is clearly correct for the several reasons discussed hereafter.

[5] Later, on October 21, 2011, the trial court entered (pursuant to 9 U.S.C. § 13) a judgment on its order denying appellant's petition to vacate and granting Bechtel's cross-petition to confirm.

5

1353.)  That court has also made clear its own view of the very limited scope of judicial review of arbitrations conducted under the FAA, as contrasted with arbitrations conducted pursuant to California law.  (See *Pearson Dental Supplies, Inc. v. Superior Court* (2010) 48 Cal.4th 665, 677-679, especially fn. 3; see also *Countrywide Financial Corp. v. Bundy* (2010) 187 Cal.App.4th 234, 249-254; *Christensen v. Smith* (2009) 171 Cal.App.4th 931, 937-938.)  These authorities make clear that, in California, the scope of appellate review of arbitrations conducted pursuant to the FAA—as this one was—is extremely limited.

Now to the arguments presented in appellant's in pro per briefs to us.  First of all, his only substantive argument is that the arbitrator erred in finding that appellant attempted to bribe witness Cuen to change his prior testimony against appellant because Cuen was allowed to testify, and was administered the oath, telephonically.

We will deal with that contention shortly, but what is important for present purposes is that, in his Preliminary Order No. 24 and Interim Award of October 18, 2009, the arbitrator stated no fewer than *four reasons* for his dismissal of the case.  He stated: "The Conclusions leading to dismissal of this case are based upon numerous Findings of Fact set forth above; I will not repeat them here but some of the more significant are as follows:  1.  Mr. Brooks attempted to bribe Cuen, and admits to attempting to pay him in connection with his testimony, knowing that the witness had testified adversely to him; 2. Mr. Brooks attempted to intimidate the witnesses Walrich and Olson into not testifying and/or changing their testimony knowing their testimony had been and would be adverse to him; 3.  Mr. Brooks repeatedly engaged in conduct in this case, in at least one deposition, in multiple telephone conferences, and in multiple emails, which violated fundamental concepts of civility, decency, and respect, and in some of those instances violated Preliminary Order No. 14; and, 4.  His testimony in the May 12 hearing was evasive and deceptive, compounded by his repeated refusals to testify based upon assertion of his Fifth Amendment rights, in at least these respects:  a.  his explanation and refusals to testify about the purpose of the lie detector test he proposed to Cuen; b.  the purpose of his communications to Goodman Network employees.  [¶] All of the conduct

6

referenced in the preceding paragraph was committed willfully, in bad faith, and with knowledge that the conduct was improper and potentially violative of the law. Indeed, throughout these proceedings Mr. Brooks has himself recognized, and even insisted, that much of the conduct at issue here carries with it potential criminal liability."

However, in his briefs to us, appellant addresses only the first issue, i.e., his alleged attempt to bribe Cuen. He does not even mention, in either brief, the other three reasons articulated by Arbitrator Thorpe, and has thus waived any contest to those conclusions of the arbitrator. Put another way, even if appellant is correct in his argument that Cuen should not have been allowed to testify via telephone, there are, as the arbitrator found, three additional and independent reasons why the trial court was correct in not overturning the arbitrator's decision in Bechtel's favor. Any one of those reasons was an adequate and correct basis for denial of appellant's petition to vacate the arbitrator's ruling against appellant and in favor of Bechtel. Further, appellant's argument—as noted, his only arguably substantive argument—that the arbitrator erred in allowing Cuen's testimony to be given via telephone (and his oath to be administered similarly) is unavailing.

First of all, our examination of the record reveals no objection by appellant when Bechtel called Cuen as a witness and examined him via the telephone. Indeed, appellant himself called and examined two witnesses via the telephone. Appellant cannot complain about a process and procedure in which he himself indulged and, further, which he did not complain about during the course of the arbitration. As the Ninth Circuit has held several times, "a party may not sit idle through an arbitration process and then collaterally attack that procedure on grounds not raised before the arbitrators when the result turns out to be adverse." (*Marino v. Writers Guild of America, East, Inc.* (9th Cir. 1993) 992 F.2d 1480, 1483-1484; see also *United Steelworkers of America v. Smoke-Craft, Inc.* (9th Cir. 1981) 652 F.2d 1356, 1360-1361.) In any event, telephonic testimony is regularly permitted in arbitration proceedings. (See, e.g., *Young v. UAW-Labor Employment & Training Corp.* (10th Cir. 1996) 95 F.3d 992, 999 & *Al-Haddad Commodities Corp. v. Toepfer Inter. Asia Ltd.* (E.D.Va. 2007) 485 F.Supp.2d 677, 686.)

7

Regarding the issue of Cuen's testimony as to appellant's efforts to bribe him, there was considerable substantiating evidence to this effect. Thus, Bechtel presented to the arbitrator—and did so without any objection from appellant—a sworn affidavit from Cuen that mirrored his telephonic testimony regarding appellant's offer to pay. Such evidence was expressly permitted by the arbitration agreement in effect here and by California law (see, e.g., *Frantz v. Inter-Insurance Exchange* (1964) 229 Cal.App.2d 269, 276-277). Additionally, in his testimony in the arbitration, appellant expressly admitted to sending two e-mails to Cuen, each offering to pay him $10,000 for taking and passing a polygraph test regarding the claim by appellant that Cuen had lied in deposition testimony he had previously given.[6] As the arbitrator also noted, appellant also "refused to answer a number of questions based on his Fifth Amendment rights. These questions cover[ed] a wide variety of issues," including the testimony of Cuen.

For all these reasons, the superior court was clearly correct in finding that appellant's petition to overturn the arbitrator's award "lacks merit" and thus confirming that award.

---

[6] Copies of these e-mails were also attached to Bechtel's (successful) motion to dismiss the arbitration.

## IV. DISPOSITION

The appealed-from orders and the subsequent judgment of the San Francisco Superior Court are all affirmed.[7]

_____
Haerle, J.

We concur:


_____
Kline, P.J.


_____
Richman, J.

---

[7] After this case was fully briefed, Bechtel filed a motion and supporting papers asking this court to impose sanctions of $30,000 on appellant for filing a frivolous appeal. This is, admittedly, a close issue because, as the arbitrator found and the San Francisco Superior Court readily agreed, appellant's claims against Bechtel clearly lack merit. However, because of the result we reach in this appeal, appellant's in pro per status, and his occupation as a construction worker, we conclude that we should deny Bechtel's motion, and thus do so.